1

2

3

4

5

6

7

8                               UNITED STATES DISTRICT COURT

9                         FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   TODD FISHER, individually and on behalf          Case No.  1:18-cv-1704-NONE-EPG
     of all others similarly situated,
12                                                     FINDINGS AND RECOMMENDATIONS
                          Plaintiff,                   RECOMMENDING THAT PLAINTIFF'S
13                                                     MOTION FOR PRELIMINARY APPROVAL
                 v.                                    OF CLASS ACTION SETTLEMENT BE
14                                                     DENIED
     OSMOSE UTILITIES SERVICES, INC.,
15                                                     (ECF No. 35)
                          Defendant.
16                                                     OBJECTIONS, IF ANY, DUE WITHIN
                                                       FOURTEEN (14) DAYS
17

18
            Before the Court is Plaintiff Todd Fisher's ("Plaintiff") motion for preliminary approval
19
     of a class action settlement. (ECF No. 35.) District Judge Dale A. Drozd[1] referred the matter to
20
     the undersigned for issuance of findings and recommendations. (ECF No. 22-1.) For the
21
     following reasons, the Court recommends that the motion be denied.
22
            I.      BACKGROUND
23
            A.      Procedural History
24
            Defendant provides various inspection, maintenance, and rehabilitation services and
25
     products to electric and telecommunications utilities. (ECF No. 35 at 12.) Plaintiff filed this
26
     ─────────────────
            [1] This matter was initially assigned to District Judge Lawrence J. O'Neill. On February 2, 2020, District
27   Judge O'Neill assumed inactive senior status and the case was unassigned. (ECF No. 22.) As explained in the
     Standing Order in Light of Ongoing Judicial Emergency in the Eastern District of California, District Judge Drozd is
28   presiding over all cases previously assigned to District Judge O'Neill as well as those assigned to District Judge
     Drozd. (ECF No. 22-1.)

                                                        1

putative class action alleging state law wage and hour violations against Defendant in the Superior Court of California for the County of Tulare on November 5, 2018. (ECF No. 1-2.) On December 13, 2018, Defendant removed the matter to federal court. (ECF No. 1.)

Plaintiff filed a motion for leave to amend the complaint on January 23, 2020, which Defendant opposed. (*See* ECF Nos. 18, 23, 25.) The Court entered an order granting Plaintiff leave to amend on March 4, 2020. (ECF No. 27.) On March 16, 2020, Plaintiff filed a First Amended Complaint alleging causes causes of action under California law for: (1) failure to pay minimum wages; (2) failure to pay overtime and double-time wages; (3) failure to pay all regular wages; (4) failure to provide rest breaks; (5) failure to provide meal breaks; (6) failure to reimburse business expenses; (7) failure to provide itemized wage statements; (8) failure to pay waiting time penalties; (9) failure to pay Labor Code § 558 penalties; (10) violation of California Business and Professions Code §§ 17200, *et seq.*; and (11) violation of the Private Attorney General Act, California Labor Code §§ 2698, *et seq*. ("PAGA"). (ECF No. 29.)

On March 18, 2020, Plaintiff filed a notice of settlement representing that the matter had been settled on a class-wide basis. (ECF No. 29.) On August 19, 2020, Plaintiff filed a motion for preliminary approval of the class settlement.[2] (ECF No. 35.) By way of the motion, Plaintiffs seek preliminary approval of the parties' settlement agreement; conditional certification of a settlement class; approval of a proposed class notice; appointment of Plaintiff as class representative; appointment of the Law Offices of Todd M. Friedman, P.C. as class counsel; appointment of Simpluris as the settlement administrator; and to set a hearing date for final approval of the class action settlement. (*Id.* at 2.) Defendant did not file an opposition or otherwise respond to the motion.

**B.    Proposed Settlement Agreement**

The parties attended private mediation with Bruce Friedman on March 5, 2020, and reached an agreement in principle on that date. (ECF No. 35-1 at 3.) The parties subsequently executed a final settlement agreement, which contains the following key provisions (ECF No. 38):

---

[2] On September 14, 2020, Adrian Bacon, counsel for Plaintiff, filed a declaration in support of the motion explaining that, after filing the motion, the parties made "very minor" modifications to the settlement. (ECF No. 38.) Mr. Bacon attached an updated copy of the settlement agreement to his declaration. (*Id.*).

For settlement purposes, the class is defined as "individuals who are or were previously employed (1) by Defendant; (2) in a Covered Job Position; (3) at any point during the Class Period." (ECF No. 38 at 8.) "Covered Job Position" means "any employee of Defendant working in California during the Class Period who is or was employed as either a crewman, foreman and/or foreman trainee." (*Id.* at 5.) "Class Period" is defined as "the time from September 7, 2016 through and including May 31, 2020 or the date of preliminary approval, whichever occurs first." (*Id.*) Putative class members are members of the settlement class unless they submit a timely opt-out form no later than 30 days after the notice is mailed. (*Id.* 11-14.) The settlement class is estimated to be comprised of approximately 857 members. (*Id.* at 20-21.)

The settlement agreement provides for a gross settlement fund of $375,000.00 to be allocated as follows: a $10,000.00 incentive payment to Plaintiff; $125,000.00 in attorneys' fees; litigation costs not to exceed $10,000.00; settlement administration costs not to exceed $20,000.00; and $5,000.00 in PAGA payments, with $3,750.00 to be paid to the Labor Workforce Development Agency and $1,250.00 to be added to the net settlement fund and distributed to aggrieved employees on a pro rata basis. (ECF No. 38 at 15-17.) Each individual settlement share shall be allocated as 33.33% wages, 33.33% interest, and 33.34% penalties. (*Id.* at 16.) The individual settlement shares are calculated by using the following formula:

$$\frac{\text{Individual participating settlement class member's qualifying work weeks}}{\text{All participating settlement class members' qualifying work weeks}} \quad X \quad \text{Net settlement amount}$$

(*Id.* at 17.) This formula will be adjusted so that crew members receive twice the amount of funds per work week as foremen by using a .5 multiplier for all foremen workweeks. (*Id.*)[3]

The settlement is non-reversionary and any settlement shares that remain uncashed after ninety (90) days will be paid to an entity called Public Justice in *cy pres.* (ECF No. 38 at 18.) The settlement also contains a provision restricting any settlement class members from making any public statements regarding this matter and requiring the settlement class members to keep the

---

[3]    The motion estimates that the average payout if all class members participate will be $246.50. (ECF No. 35-1 at 17.)

1
2

settlement confidential. (ECF No. 38 at 21.) The settlement agreement includes a release of:

> all claims, demands, rights, liabilities, and/or causes of action of any nature and description whatsoever, known or unknown, in law or in equity, whether or not concealed or hidden, that were asserted or could have been asserted at any time in the Litigation based on the facts, theories, and/or claims alleged in the Litigation; it includes and covers claims for violations of any state or federal statutes, rules or regulations, claims that were asserted or could have been asserted at any time in the Litigation based on the subject matter alleged in the Litigation by any Settlement Class Member that, during the Class Period, Defendant at any time: (1) failed to pay wages, including failure to pay minimum wages, sick pay, and reporting time pay; (2) failed to pay overtime and/or double-time wages; (3) failed to timely provide rest breaks or a penalty payment in lieu thereof; (4) failed to provide timely meal periods or a penalty payment in lieu thereof; (5) failed to reimburse reasonable business expenses pursuant to Labor Code § 2802; (6) failed to provide an accurate itemized wage statement; (7) failed to timely pay wages or pay all wages due upon termination of employment; (8) failed to provide penalties provided for in Labor Code § 558; (9) failed to provide restitution for unpaid sums; (10) violated of Business & Professions Code §§ 17200, et seq.; (11) failed to maintain accurate records; (12) owe penalties under the Private Attorneys General Act for any violation of the Labor Code (Labor Code §§ 2698, et seq.).

(ECF No. 38 at 7.) Any settlement class members who do not timely opt out are bound by this release. (*Id.* at 13.)

Additionally, the Plaintiff submitted a proposed notice which, among other things, requires objections to be received within thirty days after the notice is mailed in order for objections to be "valid and effective." (ECF No. 35-1 at 73-74.) The settlement agreement further states that the Court will "consider any timely objections made" at the final fairness hearing. (ECF No. 38 at 14.)

### C.     The Hearing and Supplemental Briefing

On September 18, 2020, the Court held a hearing on the motion. (ECF No. 39.) Counsel Adrian Bacon appeared on behalf of Plaintiff and counsel James Fessenden appeared on behalf of Defendant. (*Id.*) At the hearing, the Court expressed concerns that Plaintiff had not adequately established that the settlement was fair and reasonable. (*See* ECF No. 42.) The Court asked Plaintiff's counsel to explain how the damages analyses and calculations were performed. (*Id.*) The Court also expressed concerns about the scope of investigation into the class claims, as well as the amount of the incentive payment to Plaintiff, the settlement agreement's prohibition on making public statements, and the procedure for objections. (*Id.* at 40-47, 50-53.) The Court

1  granted the parties leave to file supplemental evidence in support of the motion or to advise the

2  Court that they wished to stand on the existing documentation. (ECF Nos. 39)

3      The parties filed two stipulations seeking to extend the deadline to submit additional

4  evidence in support of the motion due to delays caused by the COVID-19 pandemic, which the

5  Court approved. (ECF Nos. 41, 43-45.) Karen L. Wallace, counsel for Plaintiff, filed a

6  supplemental declaration in support of the motion. (ECF No. 48. ) Ms. Wallace's declaration

7  attached a supplemental declaration from Plaintiff as well as declarations from four putative class

8  members. (*Id.*)

9      **II.    LEGAL STANDARDS**

10     Federal Rule of Civil Procedure 23(e) requires judicial review and approval of any

11  proposed class action settlement agreement.  This requirement is in place because "the parties that

12  are present and settling the case — class counsel, the class representatives, and the defendants —

13  are proposing to compromise the rights of absent class members," and judicial review "aims to

14  ensure that the interests of these absent class members are safeguarded." *Lusk v. Five Guys*

15  *Enterprises LLC*, 2019 WL 7048791, at *1 (E.D. Cal. Dec. 23, 2019) (quoting *Newberg on Class*

16  *Actions* § 13:40 (5th ed.)). "Courts have long recognized that settlement class actions present

17  unique due process concerns for absent class members." *In re Bluetooth Headset Prods. Liab.*

18  *Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (citation and quotation marks omitted). When parties

19  seek approval of a settlement agreement negotiated prior to formal class certification, "there is an

20  even greater potential for a breach of fiduciary duty owed the class during settlement." *Id.* Thus, a

21  court must review such agreements with "a more probing inquiry" for evidence of collusion or

22  other conflicts of interest than what is normally required under the Federal Rules. *Hanlon v.*

23  *Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *see also Bluetooth*, 654 F.3d at 946.

24     Rule 23(e)(1), as amended in 2018, requires the movant to "provide the court with

25  information" that shows that "the court will likely be able to" make two separate determinations.

26  Fed. R. Civ. P. 23(e)(1).  First, approval of the settlement agreement is warranted under Rule

27  23(e)(2).  Second, class certification is warranted under Rule 23(a)-(b) "for purposes of judgment

28  on the proposal."  Fed. R. Civ. P. 23(e)(1)(B)(ii).

    As for the first determination of whether approval of the settlement agreement is

5

warranted, Rule 23(e)(2) authorizes final approval of class action settlement agreement only if the movant shows that the settlement agreement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To determine whether the settlement agreement is fair, reasonable, and adequate, the court must consider the following four factors. First, whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). Second, whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). Third, whether "the relief provided for the class is adequate," considering "(i) the costs, risks and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment;" and (i) any agreement made in connection with the proposal. Fed. R. Civ. P. 23(e)(2)(C). Fourth, whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). The first and second factors are viewed as "procedural" in nature, and the third and fourth factors are viewed as "substantive" in nature. Fed. R. Civ. P. 23(e)(2) Advisory Committee's note to 2018 amendment.

As for the second determination as to whether class certification is warranted under Rule 23(a)-(b), the court must determine whether it is "likely" that it will be able to "certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1). Accordingly, the court must review the class certification standards under Rule 23(a)-(b), and based on those standards the court must "reach a tentative conclusion that it will be able to certify the class in conjunction with final approval of the settlement." *Lusk,* 2019 WL *Newberg on Class Actions* § 13:18 (5th ed.).

**III.     DISCUSSION**

**1.  Plaintiff's argument and evidence regarding whether the settlement is fair, reasonable, and adequate.**

Plaintiff asks the Court to make a preliminary finding that the parties' settlement is fair, reasonable, and adequate. (ECF No. 35 at 20.) Plaintiff argues that continuing litigation presents significant risks because Defendant "vigorously contests the claims . . . and has presented steep procedural and factual obstacles, including a collective bargaining agreement, that were given fair consideration at mediation." (*Id.* at 20.) Plaintiff argues that Defendant's defenses were "given due consideration in mediation by experienced and informed class counsel, with the oversight of

1  an experienced mediator" and the settlement was therefore negotiated at arms' length and should

2  be given a presumption of fairness. (*Id.* at 21.)

3          Plaintiffs also argue that the evidence in discovery "showed significant challenges to

4  certification on the merits" and "cast doubt on the questions of damages issues." (ECF No. 35 at

5  21-22.) There was also a risk of decertification because the parties had not completed discovery.

6  (*Id.* at 22.) The settlement provides a fair and substantial benefit to the class, and the base figures

7  used to arrive at the damages estimates were provided by Plaintiff, "who worked for Defendant

8  for several years . . . and was familiar with the work environment generally, including the

9  experiences of similarly situated co-workers." (*Id.* at 23.) Additionally, "[t]he time and effort

10  spent investigating and assessing the claims and defenses at issue support preliminary approval"

   of the settlement. (*Id.*)

11          Plaintiff's counsel, Mr. Bacon, submitted a declaration in support of the motion stating

12  that he "estimated Defendant's potential exposure in this case by using records provided by

13  Defendant in discovery and in the course of the mediation." (ECF No. 35-1 at 18.) Mr. Bacon also

14  based the damages analysis on his interview of Plaintiff. (*Id.*) Mr. Bacon estimated the following

15  recoverable amounts: (1) $320,000.00 for unpaid meal and rest break premiums; (2) $250,000.00

16  for Labor Code § 226 wage statement damages; (3) $1.7 million for Labor Code § 203 waiting

17  time penalties; (4) $500,000.00 for PAGA damages; (4) $210,000.00 for unpaid wages; and (5)

18  $200,000.00 for Labor Code § 2802 unpaid mileage and business expense damages. (*Id.* at 21-

19  22.) Therefore, Mr. Bacon estimated the maximum damages to be $3.1 million, but applied a

20  "substantial reduction of this figure" due to various risk factors. (*Id.* at 22-27.)

21          After the hearing on the motion, Plaintiff submitted a supplemental declaration from

22  counsel Karen Wallace explaining that Defendant provided names and contact information for

23  thirty-three putative class members, Ms. Wallace spoke to eighteen of those putative class

24  members, and four provided Plaintiff's counsel with declarations in support of the motion. (*Id.* at

25  3-4.) Additionally, Plaintiff provided a supplemental declaration. (*Id.* at 4.)

26          Plaintiff declares that he had worked for Defendant as a crew member and as a foreman,

27  was employed from March 2011 through March 2018, did not receive pay for time spent driving

28  to a worksite, did not receive a meal break three-to-four times per week, almost never received a

rest break, never received mileage reimbursement, and did not typically record the time it took to take protective gear on and off, and took approximately ten minutes each shift for donning and doffing his equipment. (ECF No. 48 at 8-12.)

Michael Jones declared that he had worked for Defendant as a crewman and a foreman, was hired in March 2019 and was still employed at the time of his declaration, did not receive reimbursement for mileage, and was not aware that Defendant was supposed to pay for missed meal breaks. (*Id.* at 14-17.) Mr. Jones did not address how many breaks he has missed or whether he was paid for taking protective gear on and off. (*Id.*)

Walter Mejia declared that he had worked for Defendant as a crewman and as a foreman, was hired in July of 2015 and was still employed at the time of his declaration, was not paid for transportation time, took a meal period after five hours of work approximately three times per month, worked more than ten hours on several occasions and never received a second meal break, did not sign a meal waiver, does not recall receiving a missed meal break premium, and took approximately fifteen minutes each day to don and doff his protective gear but did not always record that time. (ECF No. 48 at 19-22.)

James Salcido declared that he had worked for Defendant as a crewman and a foreman, was hired in September of 2015 and was still employed at the time of his declaration, signed a collective bargaining agreement, does not start his shift until he arrives at the worksite, and has driven his own vehicle to the worksite on occasion and was not reimbursed for mileage. (*Id.* at 24-27.)

Finally, Justin Hull declared that he had worked for Defendant as a foreman in training and as a foreman, was hired in January of 2019 and was still employed at the time of his declaration, was permitted to drive a personal vehicle to worksites, is not aware of Defendant reimbursing for mileage, estimates that meal breaks are given after the fifth hour twice a week and one rest period is missed every day, and does not recall receiving any premiums for missed breaks. (*Id.* at 29-32.)

Ms. Wallace's declaration further states that the putative class members she spoke to "tend to confirm that claims regarding underpayment based on regular rate of pay and reimbursement . . . can be resolved based on documentary evidence that applies uniformly to the

class" and that "class members also confirmed several crucial aspects of the risk assessment articulated" in the declaration of Mr. Bacon filed in support of the motion. (ECF No. 48 at 5-6.)

**2. Plaintiff has not established that the settlement is fair, reasonable, and adequate.**

The evidence before the Court is not sufficient to establish that the settlement is fair, reasonable, and adequate. As the Court explained to Plaintiff's counsel at the hearing, the damages analysis submitted in support of the motion was unclear and does not explain how Mr. Bacon calculated the respective damage amounts. Mr. Bacon's declaration in support of the motion states that his investigation included "both formal and informal discovery." (ECF No. 25-1 at 19.) Defendant provided "data and documents that include the size and composition of the putative Class, information about Defendant's timekeeping and meal and rest period practices, a sample of time and payroll records, and Defendant's written wage and hour policies and procedures" in advance of mediation. (*Id.* at 2.) There is no further detail about what the "formal and informal discovery" entailed, what information was discovered, or how that information supports Mr. Bacon's conclusions. At the hearing, Mr. Bacon also confirmed that the parties did not take any depositions in this case. (ECF No. 42 at 11.) Instead, Plaintiff's counsel relied primarily on his discussions with Plaintiff to determine the settlement amounts and did not speak to any other putative class members. (*Id.*)

The Court is concerned that the parties have not considered enough information to make an informed decision about the value of the settlement. *See Millan v. Cascade Water Serv*s., Inc., 310 F.R.D. 593, 610-11 (E.D. Cal. 2015) (denying preliminary approval of a class settlement where class counsel relied heavily on information provided by the named plaintiff and defendant, assumed the number of violations, and did not present documentation regarding the extent of discovery); *cf. In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000), *as amended* (June 19, 2000) (finding that preliminary approval was appropriate where extensive formal discovery had not been completed but counsel presented the district court with documentation that they had conducted significant informal investigation, discovery, and research); *see also Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 527 (C.D. Cal. 2004) ("A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and

1   factual issues surrounding the case.") (citation omitted). Plaintiff's counsel's description of the

2   extent of discovery seems to indicate that any investigation was limited, and does not provide the

3   Court with sufficient detail to determine whether the parties had enough information to fairly

4   evaluate the merits and values of the putative class claims. The Court "cannot satisfy its

5   obligation to determine the fairness of the settlement agreement on behalf of the absent putative

6   class members without requiring . . . something more than [Plaintiff's] conclusion." *Sanchez v.*

7   *Frito-Lay, Inc.,* 2016 WL 5121890, at *4 (E.D. Cal. May 25, 2016); *see also Lusk,* 2019 WL

8   7048791, at *8 ("The specific type of discovery and the amount of discovery conducted is

9   important to the Court for purposes of the preliminary fairness determination.").

10       Following the hearing, Plaintiff submitted a supplemental declaration along with

11   declarations from four putative class members. However, these declarations do not reflect a

12   thorough investigation into the merits and also do not substantiate Mr. Bacon's calculations. For

13   example, at the hearing, Mr. Bacon explained that he arrived at the valuation for meal and rest

14   break violations by estimating 873 total class members, an average wage of $20 per hour, and just

15   under ten total work weeks for each class member. (ECF No. 42 at 5-6, 18.) Mr. Bacon then

16   "extrapolated" one rest break and one meal break violation per week based on his conversations

17   with Plaintiff. (*Id.* at 6-7.) However, the supplemental declarations Plaintiff submitted do not

18   support Mr. Bacon's assumption of one rest break and one meal break violation per week.

19   Plaintiff and Mr. Hull declared they missed breaks more frequently, Mr. Mejia declared that he

20   missed meal breaks less frequently but provides no information regarding rest breaks, and other

21   declarants don't provide any information at all regarding how many meal or rest breaks they did

22   or did not receive. (*See* ECF No. 48.) Additionally, all declarants appear to indicate that they were

23   employed by Defendant for longer than ten pay periods. (*See id*.)

24       Similarly, at the hearing, Mr. Bacon explained that the Labor Code 226 penalties were

25   derivative of the off-the-clock claim. (ECF No. 42 at 21.) Mr. Bacon based his damages analysis

26   on Plaintiff's representation that employees spent approximately ten minutes total per shift taking

27   protective equipment on and off. (*Id.* at 22.) Mr. Bacon estimated 50 minutes per workweek was

28   unpaid, and multiplied that by the number of work weeks and average wage, which came out to

$133,00.00. (*Id.* at 23.) However, the supplemental declarations Plaintiff submitted either

1    estimated that more than ten minutes total per shift was spent taking protective equipment on and

2    off, or they provided no estimate or statements regarding this claim. (*See* ECF No. 48.)

3         Likewise, Mr. Bacon calculated the mileage reimbursement damages based on an estimate

4    of 100 miles per work week multiplied by 25 cents, which is the difference between Defendant's

5    mileage reimbursement rate of 30 cents and the federal rate of 55 cents, and then discounted the

6    total amount because this claim only applied to crewmen. (ECF No. 42 at 28-29.) However, all of

7    the declarants were foremen for at least some of their employment with Defendant, and none of

8    the declarants provided any estimates of how many miles they drove for which they received no

9    reimbursements while crewmen. (ECF No. at 48.) Instead, those who provided declarations

10   regarding Defendant's mileage reimbursement policies stated that Defendant did not provide any

     reimbursement at all.[4]

11        In light of the foregoing, the Court cannot conclude that Plaintiff has made an adequate

12   showing sufficient to warrant a preliminary finding that the proposed settlement is fair,

13   reasonable, and adequate. The lack of evidentiary support and explanation for Plaintiff's

14   counsel's calculations in this case raises significant concerns about whether the interests of the

15   absent putative class members were adequately represented in settlement negotiations and the

16   extent to which the settlement is the product of a well-informed negotiation.

17        Procedurally, the parties appear to have engaged in a good-faith effort to engage in arms-

18   length, non-collusive negotiations. However, substantively, the settlement amount represents just

19   over twelve percent of Mr. Bacon's estimated maximum damages. Although it is true that a

20   settlement agreement amounting to a low percentage of the class's potential recovery does not

21   render the agreement per se inadequate or unfair, *see Officers for Justice v. Civil Serv. Comm'n of*

22   *City & Cty. of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982), courts must "consider plaintiffs'

23   expected recovery balanced against the value of the settlement offer" when addressing whether a

24   proposed settlement is substantively fair or adequate. *In re Tableware Antitrust Litig.,* 484

25        [4] Mr. Bacon further explained that the remaining claims were derivative, and it was unclear whether those
     penalties could be recovered based on Plaintiff's other theories. (ECF No. 42 at 21-26.) For example, the law was

26   unsettled as to whether Labor Code 226 penalties could be recovered unless there is an actual injury. (*Id.* at 25.)
     Additionally, Labor Code 203 penalties, which were estimated at $1.7 million, would be difficult to recover because

27   they required a showing of willfulness. (*Id.* sat 26-27.) Mr. Bacon did not provide further detail regarding the
     calculations for the estimated $210,000.00 in damages for unpaid wages or the basis for this claim.

28

1    F.Supp.2d 1078, 1080 (N.D. Cal. 2007); *see also Lusk,* 2019 WL 7048791, at *5 ("[T]he court

2    must consider the amount obtained in recovery against the estimated value of the class claims if

3    those claims were successfully adjudicated on the merits."). Without substantiation for Plaintiff's

4    counsel's estimates and assumptions, it is questionable that recovery under the settlement

5    agreement is reasonable or "within the range of possible approval." *See Tableware,* 484

6    F.Supp.2d at 1079.

7         The Court's concerns regarding the value of the settlement are heightened where, as here,

8    all class members who do not affirmatively opt out from the litigation release all claims arising

9    out of the facts, theories, and/or claims asserted in the complaint. Specifically, the settlement

10   agreement releases:

11       all claims, demands, rights, liabilities, and/or causes of action of any nature and
         description whatsoever, known or unknown, in law or in equity, whether or not
12       concealed or hidden, that were asserted or could have been asserted at any time in
         the Litigation based on the facts, theories, and/or claims alleged in the Litigation; it
13       includes and covers claims for violations of any state or federal statutes, rules or
         regulations, claims that were asserted or could have been asserted at any time in
14       the Litigation based on the subject matter alleged in the Litigation[.]

15   (ECF No. 38 at 7.) This language goes beyond releasing the claims set forth in the complaint. The

16   motion argues that the settlement agreement "was intentionally drafted to limit the scope of the

17   release by the putative Class to the facts that were alleged or that could have been alleged in the

18   Litigation and occurred during the Class Period." (ECF No. 35 at 16.) However, the scope of

19   release goes beyond any claims that were analyzed in connection with the settlement.

20        As explained at the hearing, the Court also has concerns about the language in the

21   settlement agreement and the notice indicating that the Court will only consider timely objections

22   at the final fairness hearing. (ECF No. 42 at 53.) Putative class members are also prohibited from

23   making public statements regarding this case. Plaintiff has failed to make a preliminary showing

24   that the value of the settlement is reasonable in light of these provisions.

25        Additionally, the proposed incentive award of $10,000.00 to Plaintiff appears excessive

26   under the circumstances of this case. It is approximately 2.66% of the total settlement amount,

27   and is significantly higher than the average of $246.50 that Plaintiff estimates each settlement

28   class member will receive. *See Sandoval v. Tharaldson Emple. Mgmt.,* 2010 WL 2486346, at *9-

10 (C.D. Cal. June 15, 2010) (collecting cases and concluding that a request for an incentive award representing one percent of the settlement fund was excessive). Notably, Plaintiff estimates that he only spent 15-20 hours in connection with the case, and the activities he performed appear to be typical for wage-and-hour putative class actions. In light of the Court's finding that Plaintiff has failed to establish that the settlement is fair, adequate, and reasonable, if Plaintiff renews his request for an incentive award that amounts to a similarly high proportion of the overall settlement amount or is disproportionate relative to the recovery of other class members, Plaintiff should submit evidence establishing that the requested award is warranted.

Similarly, Plaintiff's counsel requests attorneys' fees of $125,000.00, representing approximately 33.33% of the total settlement amount. *"When making a preliminary fairness determination of a proposed class action, the court should assess the reasonableness of the attorney's fee award because an inordinate fee may be the sign that counsel sold out the class's claims at a low value in return for the high fee."* *Lusk,* 2019 WL 7047891, at *8 (citation and quotation marks omitted).  Where a defendant is willing to pay high fees, this "may also indicate that the relief in the settlement undervalues the class's claims[.]" *Id.*

Here, the attorneys' fee request exceeds the Ninth Circuit's 25% benchmark where attorneys' fees are to be paid from a common fund. *See Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1029 (9th Cir. 1998). Additionally, the settlement agreement contains a "clear sailing" fee provision in which Defendant agrees not to object to Plaintiff's counsel's request for attorneys' fees. (Doc. No. 38 at 16.) *See Bluetooth*, 654 F.3d at 947 ("[T]he very existence of a clear sailing provision increases the likelihood that class counsel will have bargained away something of value to the class.") (citation omitted).

Mr. Bacon declares that fee awards of one-third of the maximum settlement fund "have been consistently approved as reasonable" in his experience, and is warranted here because of Plaintiff's counsel's "efforts and risks in pursuing this case, and the results achieved[.]" (ECF No. 35-1 at 27.) However, the 25%, and not 33.33%, is the benchmark in the Ninth Circuit. Additionally, Plaintiff's argument that the proposed fee is warranted because of counsel's efforts and risks in pursuing this case, as well as the results achieved, can be said to apply to virtually all plaintiff's attorneys settling wage-and-hour putative class action lawsuits. This argument is not

1  persuasive where, as here, Plaintiff has not substantiated the damages analysis for the settled

2  claims and the matter appears to have been settled prior to almost any discovery or law and

3  motion practice. While an upward adjustment of the 25% benchmark may be warranted in certain

4  circumstances, Plaintiff has not identified any reasons for such an adjustment here. *See Vizcaino*

5  *v. Microsoft Corp.,* 290 F.3d 1043, 1048 (9th Cir. 2002) (setting forth factors to be considered

6  when adjusting the 25% benchmark).

7      If Plaintiff elects to file another motion for preliminary approval that seeks attorneys' fees

8  in excess of the 25% benchmark, any such request should address why an adjustment is

9  warranted. The Court notes that a lodestar method is also permitted for determining attorney's

10 fees. *See Hanlon,* 150 F.3d at 1029 (reasoning that the Ninth Circuit has affirmed the use of either

11 the percentage or lodestar method where the settlement creates a common fund). Therefore, if

12 Plaintiff includes a lodestar analysis in any renewed motion, either as the method for analyzing

13 fees or as a crosscheck for the percentage analysis, Plaintiff's analysis should focus on rates

14 awarded in the Fresno Division of this district. *See Quiroz v. City of Ceres*, 2019 WL 1005071, at

15 *7 (E.D. Cal. Mar. 1, 2019) (setting forth hourly rates accepted as reasonable for lodestar

16 purposes in the Fresno Division); *see also Vizcaino,* 290 F.2d at 1050 (applying the lodestar

17 method as a cross-check to determine the reasonableness of a percentage fee request).

18 Additionally, in light of the settlement agreement's "clear sailing" provision, any request for

19 attorneys' fees will be closely scrutinized. *Bluetooth,* 654 F.3d at 948 ("[W]hen confronted with a

20 clear sailing provision, the district court has a heightened duty to peer into the provision and

21 scrutinize closely the relationship between attorneys' fees and benefit to the class, being careful to

22 avoid awarding unreasonably high fees simply because they are uncontested.") (citation and

23 quotation marks omitted).

24     In light of the foregoing, the Court does not find that the proposed settlement is fair,

25 reasonable, and adequate pursuant to Rule 23(e) and recommends denial of the motion on that

26 basis. Because the Court denies preliminary approval of the proposed settlement, it declines to

27 address whether Plaintiff has provided sufficient information to certify the class for settlement

28 purposes.

///

14

1  **IV.    CONCLUSION AND RECOMMENDATION**

2         Accordingly, IT IS HEREBY RECOMMENDED that Plaintiff's motion for preliminary

3  approval of a class action settlement (ECF No. 35) be DENIED.

4         These findings and recommendations are submitted to the United States District Judge

5  assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen

6  (14) days after being served with these findings and recommendations, the parties may file

7  written objections with the Court. Such a document should be captioned "Objections to

8  Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file

9  objections within the specified time may result in the waiver of the "right to challenge the

10 magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014)

11 (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

12

13 IT IS SO ORDERED.

14    Dated:   __**April 5, 2021**__                      /s/ *Erica P. Grosjean*

15                                            UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28