UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TODD FISHER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>OSMOSE UTILITIES SERVICES, INC.,<br><br>Defendant. | No.  1:18-cv-1704-NONE-EPG<br><br><br>ORDER ADOPTING FINDINGS AND RECOMMENDATIONS AND DENYING PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT<br><br>(Doc. Nos. 35, 49) |

Plaintiff Todd Fisher brings this putative class action alleging state law wage and hour violations against defendant Osmose Utilities Services, Inc.  Before the court is plaintiff's motion for preliminary approval of a class action settlement.  (Doc. No. 35.)  The matter was referred to a United States Magistrate Judge for issuance of findings and recommendations.  (Doc. No. 22-1.)

On April 5, 2021, the assigned magistrate judge issued findings and recommendations recommending that plaintiff's motion for preliminary approval of the class action settlement be denied.  (Doc. No. 49.)  Those findings and recommendations were served on the parties and contained notice that any objections thereto were to be filed within fourteen (14) days after service.  (*Id.* at 15.)  On April 9, 2015, the parties filed a stipulation requesting an extension of time to file their objections, which the magistrate judge granted.  (Doc. Nos. 50, 51.)  On May 14,

1  2021, the parties each filed objections to the findings and recommendations. (Doc. Nos. 52, 53.)
2  Plaintiff also filed a request for judicial notice in support of his objections.[1] (Doc. No. 54.)

3  In accordance with the provisions of 28 U.S.C. § 636(b)(1)(C), this court has conducted a
4  *de novo* review of the case.  At the outset the court observes that the objections to the pending
5  findings and recommendations essentially ask the court to trust counsels' judgment, based on
6  their experience, and to preliminarily approve the parties' settlement, especially because class
7  members have demonstrated their support for that settlement. (*See, e.g.*, Doc. No. 53 at 2
8  ("Ultimately if the Class wants the settlement approved, then it should be approved."), 16 ("If the
9  parties, their counsel, and Class Members all willingly advocate approval of the settlement, then
10 the Court should approve it.").)  However, "[b]ecause they impose binding judgments on absent
11 class members, federal courts must approve class action settlements and ensure that they are fair,
12 reasonable, and adequate." *Briseño v. Henderson*, 998 F.3d 1014, 1031 (9th Cir. 2021); *see also*
13 Fed. R. Civ. P. 23(e). "While courts should not casually second-guess class settlements brokered
14 by the parties, they should not greenlight them, either," simply because the parties claim the
15 settlement is fair and reasonable. *Id.* at 1018.  Under the law, this court has an independent duty
16 to review the terms of the settlement, including how the settlement award was reached and
17 calculated.

18 With that said, the court turns to the parties' substantive objections to the findings and
19 recommendations, which primarily take issue with the magistrate judge's findings that the parties
20 conducted insufficient discovery and failed to consider enough information to make an informed
21 decision regarding the value of the claims. (*See* Doc. Nos. 49 at 9, 52 at 4, 53 at 12.)  For the
22 reasons set forth below and in the pending findings and recommendations, the court concludes
23 /////

---

[1] Plaintiff requests that the court take judicial notice of a motion for final approval of a class action settlement and the supporting declarations filed in a previous wage and hour class action against defendant in the San Bernardino County Superior Court, *Contreras v. Osmose Utility Services, Inc.*, Case No. CIVDS1513998 ("*Contreras* settlement"). (Doc. No. 54.)  Because the court "may take judicial notice of undisputed matters of public record, including documents on file in federal or state courts," *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012), plaintiff's request for judicial notice will be granted.

that plaintiff has failed to establish that the settlement is fair or reasonable in light of the evidence before the court.

To assess the fairness of a settlement under Rule 23(e), district courts should generally weigh

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of the class members of the proposed settlement.

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (citation omitted). Prior to formal class certification, a preliminary fairness determination is appropriate "[i]f the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).

In recommending the denial of plaintiff's motion for preliminary approval, the magistrate judge found, in part, that "Plaintiff's counsel's description of the extent of discovery seems to indicate that any investigation was limited, and does not provide the Court with sufficient detail to determine whether the parties had enough information to fairly evaluate the merits and values of the putative class claims." (Doc. No. 49 at 10.) In his objections, plaintiff explains that counsel interviewed eighteen class members (including plaintiff), spoke extensively with plaintiff, reviewed declarations from additional class members provided by defendant, reviewed the *Contreras* settlement, and "reviewed policy and procedure documents and data provided by Defendant about the number of workweeks and a breakdown of the number of Class Members, as well as their wage rates, for purposes of calculating damages based on the theories alleged." (Doc. No. 53 at 2–3.)

In support of the motion for preliminary approval, plaintiff's counsel declares that he prepared his damages analysis "by interviewing [plaintiff] extensively about his experiences, and also by reviewing the records provided by Defendant." (Bacon Decl., Doc. No. 35-1 ¶¶ 32, 34–

3

1  35.) However, at the motion hearing before the magistrate judge, plaintiff's counsel conceded
2  that no depositions had been taken in this action and that only the named plaintiff had been
3  interviewed. (*See* Doc. No. 42 at 11.) In response to the magistrate judge's expressed concerns
4  that the parties did not speak to anyone other than the named plaintiff, plaintiff's counsel
5  "specifically requested [from defendant] contact information for Class Members who worked as
6  both foreman and crew members during the Class Period, i.e. hybrid workers like Plaintiff,
7  because those individuals would share the perspective of both the broader Class and the Subclass,
8  as well as be more likely to have worked for a longer period of time (i.e. greater level of
9  experience and insight) and, due to their supervisory role, be more attuned to and mindful of the
10 experiences of their colleagues." (Doc. No. 53 at 6.) Out of 857 class members, defendant
11 "provide[d] Class Counsel with contact information for 33 Class Members (plus Plaintiff), and
12 Class Counsel was able to speak with 18 (plus Plaintiff)," and from that, plaintiff's counsel
13 provided the court with declarations from only the named plaintiff and four putative class
14 members. (*Id.*; *see* Doc. No. 48.)

15 Based on the above, the undersigned agrees that it appears the parties relied on insufficient
16 information to make an informed decision about the proposed settlement given that plaintiff's
17 counsel relies heavily only on information provided by the named plaintiff and defendant. *See*
18 *Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 610–11 (E.D. Cal. 2015) (denying motion
19 for preliminary approval where class counsel relied heavily upon information from the named
20 plaintiff and the defendant, assumed violation rates, and failed to present adequate documentation
21 "to convince the Court that Plaintiff has considered sufficient information to make an informed
22 decision about fairness of the settlement.") (citing *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d
23 454, 459 (9th Cir. 2000)). While the extent of discovery conducted in a case is but one factor to
24 be considered, the lack of sufficient information retrieved during the pendency of this action
25 affects the overall determination of whether the parties' proposed settlement is fair, reasonable,
26 and adequate. (*See* Doc. No. 49 at 14 ("Plaintiff has not substantiated the damages analysis for
27 the settled claims and the matter appears to have been settled prior to almost any discovery or law
28 and motion practice.").)

Nevertheless, plaintiff contends that the valuation of claims embodied in the proposed settlement is fair and proper in light of the class members' declarations and support for the settlement as well as the *Contreras* settlement which involved the same defendant and similar allegations but resulted in a lower payout to class members. (Doc. No. 53 at 15.) This objection fails to address the deficiencies noted by the magistrate judge and, instead, provides support for the conclusion reached in the findings and recommendations that counsels' calculations are based largely on assumptions and guesses as to the violation rates and overall potential damages. (*See* Doc. No. 49 at 2–5, 7–11.)

For example, regarding off-the-clock violations, plaintiff's counsel previously explained that he based his damages analysis on the named plaintiff's "representation that employees spent approximately ten minutes total per shift taking protective equipment on and off," and from there, "estimated 50 minutes per workweek was unpaid, and multiplied that by the number of work weeks and average wage, which came out to $133,000." (Doc. No. 49 at 10 (citing Doc. No. 42 at 22–23).) However, as the magistrate judge noted, "the supplemental declarations Plaintiff submitted either estimated more than ten minutes total per shift was spent taking protective equipment on and off, or they provided no estimate or statements regarding this claim." (Doc. No. 49 at 10–11; *see* Doc. No. 48 at 11 ¶ 16 (named plaintiff estimating that "it took [him] approximately ten (10) minutes to don all such equipment before [he] started [his] shift and approximately ten (10) minutes to doff the equipment after [his] shift was over."), 21 ¶ 14 (class member estimating that "it takes [him] approximately fifteen (15) minutes to don all such equipment and tools before [his] shift and approximately fifteen (15) minutes to doff the equipment after [his] shift is over" but admitting that he does not "always record the time it takes [him] to don/doff [his] personal protective equipment.").) In response to this analysis, plaintiff's objections provide merely the following:

> Each of the Class members who were interviewed by Class Counsel described experiences that were consistent with the data Class Counsel analyzed going into mediation. Regarding timekeeping practices, each Class Member confirmed that Foremen maintained time records for their crews and that the crews all worked the same hours as one another for the day. While the timekeeping practice appears relatively common in nature, whether and to what extent

5

> some Class Members worked off-the-clock would inherently require an inquiry into each Class Member's individual experience. For example, as the Court's Order noted, aside from Plaintiff, other Class Members did not provide information regarding donning and doffing equipment off the clock but described other conduct that they performed off the clock, like uncompensated travel time. *See* Jones Decl. ¶ 7 (estimating 10–30 minutes of uncompensated off the clock time per shift for a different factual theory). Class Counsel estimated off-the-clock violations generally in order to provide value for the claim because Class Members may have different experiences working off the clock, but certifying the off-the-clock claim by contested motion may be very challenging if there is not a common nexus between the conduct and the practices.

(Doc. No. 53 at 7–8.) Plaintiff's counsel's method for obtaining an assumed violation rate for off-the-clock claims is confusing to say the least, given that counsel previously explained that this calculation was based on donning and doffing but now takes the position that employees have performed different conduct off the clock for different periods of time. Moreover, plaintiff's counsel has conceded that there are varying experiences and practices but instead of conducting a more thorough examination and inquiring with more class members about what activities they performed off the clock, counsel instead appears to have relied primarily only on the on the representations of the named plaintiff.

By way of another example, the magistrate judge found the following with respect to the meal and rest break violations:

> For example, at the hearing, Mr. Bacon explained that he arrived at the valuation for meal and rest break violations by estimating 873 total class members, an average wage of $20 per hour, and just under ten total work weeks for each class member. (ECF No. 42 at 5-6, 18.) Mr. Bacon then "extrapolated" one rest break and one meal break violation per week based on his conversations with Plaintiff. (*Id.* at 6–7.) However, the supplemental declarations Plaintiff submitted do not support Mr. Bacon's assumption of one rest break and one meal break violation per week. Plaintiff and Mr. Hull declared they missed breaks more frequently, Mr. Mejia declared that he missed meal breaks less frequently but provides no information regarding rest breaks, and other declarants don't provide any information at all regarding how many meal or rest breaks they did or did not receive. (*See* ECF No. 48.) Additionally, all declarants appear to indicate that they were employed by Defendant for longer than ten pay periods. (*See id.*)

(Doc. No. 49 at 10.) Plaintiff's objections acknowledge there are deviations among the class members' experiences but nevertheless contend that using one violation a week is a fair estimate

6

of the actual violation rate given that there were only occasional violations and that some employees experienced more violations than others. (Doc. No. 53 at 8–9.) In support of this contention, plaintiff states that the "declarants generally testified that they were provided the opportunity to take timely meal breaks shortly after four hours of work," that "[m]any of the declarants testified that they do not believe they ever missed a meal break," and that the declarants "also testified generally that they were always provided the ability to, and did, take rest breaks between 10–15 minutes in length and that this was the case with numerous different Foremen." (*Id.* at 9.) Once again in this instance, plaintiff's counsel has assumed that on average, putative class members were subject to one meal period violation and one rest break violation per week, but counsel's own explanations and documentation do not support that assumption. According to the objections and the declarations, it appears that employees either experienced more than one violation a week or none at all, and thus one violation a week does not appear to be based on anything appearing in the record before the court.[2]

Finally, plaintiff objects to the concerns expressed by the magistrate judge regarding the release provision of the proposed settlement. Under the terms of that proposed settlement agreement, "all class members who do not affirmatively opt out from the litigation release all [state and federal] claims arising out of the facts, theories, and/or claims asserted in the complaint." (Doc. No. 49 at 12 (citing Doc. No. 38 at 7).) The magistrate judge determined that the release provision here

> goes beyond releasing the claims set forth in the complaint. The motion argues that the settlement agreement "was intentionally drafted to limit the scope of the release by the putative Class to the facts that were alleged or that could have been alleged in the Litigation and occurred during the Class Period." (ECF No. 35 at

---

[2] Plaintiff contends that the class counsel in *Contreras* did not provide a more detailed damages analysis than the one advanced by plaintiff's counsel here but nevertheless, class counsel in that case also utilized a 20% meal and rest break violation rate in their damages analyses. (Doc. No. 53 at 5–6.) Obviously, just because class counsel in another case utilized the same meal and rest break violation rate and obtained approval of a settlement from another court does not justify or explain why the same violation rate should be applied in this case. That is especially true given the inadequate explanation provided by counsel, when questioned, as to why that violation rate was appropriately employed in the valuation of the claims presented in this case.

7

16.) However, the scope of release goes beyond any claims that were analyzed in connection with the settlement.

(Doc. No. 49 at 12.)  The undersigned agrees with the magistrate judge that plaintiff has failed to make a preliminary showing that the proposed settlement is reasonable in light of such a broad release provision.  Plaintiff's objections to the findings and recommendations in this regard assert that the court in *Contreras* approved a release "that was equally broad and involved the same allegations." (Doc. No. 53 at 15.)  Again, the fact that another court approved of a settlement including a similar provision does not justify why that same provision should be found acceptable here.  Again, this is especially the case since plaintiff's counsel has failed to adequately explain how the value of the settled claims was calculated in this case.

Overall, plaintiff's explanations confirm that counsel's calculations embodied in this proposed settlement are based largely on nothing more than assumptions and that the lack of evidentiary support or even adequate explanations "raise[] significant concerns about whether the interests of the absent putative class members were adequately represented in settlement negotiations and the extent to which the settlement is the product of a well-informed negotiation." (Doc. No. 49 at 11.)  Without more, this court simply cannot conclude that the proposed settlement is fair and reasonable and cannot determine whether the aforementioned release provision is appropriate.[3]

Having carefully reviewed the entire file, including the parties' objections, the court concludes that the magistrate judge's findings and recommendations are supported by the record and by proper analysis.  Accordingly,

1. The findings and recommendations entered on April 5, 2021, (Doc. No. 49), are adopted in full; and

---

[3] The pending findings and recommendations also express concerns over the proposed incentive award and attorneys' fees. (*See* Doc. No. 49 at 12–14.)  In the objections, plaintiff's counsel addresses the magistrate judge's expressed concern regarding the attorneys' fees aspect of the proposed settlement and "voluntarily agrees to request the 25% benchmark, rather than the 1/3 fee in the preliminary approval papers." (*See* Doc. No. 53 at 4, 12.)  Regardless of the amounts of the attorneys' fees and incentive award sought in this case, the deficiencies noted above regarding the valuation of claims remain and thus, the court also cannot determine whether the amounts sought in the pending motion for preliminary approval are fair and reasonable.

2. Plaintiff's motion for preliminary approval of a class action settlement (Doc. No. 35) is denied without prejudice.

IT IS SO ORDERED.

Dated: __**July 22, 2021**__  _____
UNITED STATES DISTRICT JUDGE